# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TERRI ANN B.,[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 20-1077-JWL |
| ANDREW M. SAUL, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) pursuant to sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of the medical opinions of Ms. Cloud, LCMFT, Plaintiff's treating therapist, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.    Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed an application for DIB on June 26, 2017.  (R. 14).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in considering the opinions of Ms. Cloud, the Licensed Clinical Marriage and Family Therapist (LCMFT) who treated her.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The ALJ found at step four that Plaintiff is able to perform her past relevant work as a paraeducator and bus monitor, and made the alternative step five finding that Plaintiff is able to perform other work in the economy such as the representative jobs of a dishwasher, sandwich maker, or dietary aide. (R.21-23).

## I.     The ALJ's Evaluation of the Medical Opinions[2] and Prior Administrative Medical Findings

---

[2] Plaintiff argues, "the Regulations provide that the agency is not required to articulate how they considered evidence from nonmedical [sources] such as therapist[, Ms.] Cloud." (Pl. Br. 16) (citing 20 C.F.R. § 404.1520c). The regulation to which Plaintiff cites indicates the SSA is "not required to articulate how we considered evidence from nonmedical sources." Id. 404.1520c(d). However, the regulations define a "medical source" as "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law." Id. 404.1502(d). They define "nonmedical source" as "a source of evidence who is not a medical source." Id. 404.1502(e). In accordance with the new regulations, Ms. Cloud, a Licensed Clinical Marriage and Family Therapist, is a medical source, although she is not an "acceptable medical source." Moreover, her opinions are "medical opinions." Id. 404.1513(a)(2) (2017).

4

Plaintiff claims the ALJ erred in evaluating Ms. Cloud's opinions because at one point he discounted an opinion because Plaintiff was not consistently treated with anti-convulsive drugs, although her impairment is pseudoseizures which Plaintiff asserts "are not based upon a neurological disorder necessitating an anticonvulsive [but] they appeared to be stress induced such that Plaintiff needed mental health treatment." (Pl. Br. 14). Plaintiff points to record evidence which, in her view, demonstrates Ms. Cloud's opinion should have been accepted. Id. at 14-15. Plaintiff also objects to the ALJ's discounting Ms. Cloud's opinion because there is no evidence "she 'has ever seen the seizure or postictal effects.'" Id. at 17 (quoting R. 20). She argues the ALJ failed "to explain why such observation is necessary to support [Ms. Cloud's] opinions." Id. She argues that without such an explanation the ALJ's reasons for discounting Ms. Cloud's opinions are not specific enough to allow the court to meaningfully review the decision. Id. at 17-18 (citing Langley v. Barnhart, 373 F.3d 1116, 1122 (10th Cir. 2004); Cagle v. Astrue, 266 Fed. App'x. 788, 792-793 (10th Cir. 2008); Wise v. Barnhart, 129 Fed. App'x. 443, 447 (10th Cir. 2005); King v. Barnhart, 114 Fed. App'x. 968, 972 (10th Cir. 2004); Spicer v. Barnhart, 64 F. App'x 173, 177–78 (10th Cir. 2003)). Plaintiff points to record evidence of seizure activity and argues that the evidence demonstrates the presence of stress-related seizures. Id. at 18. She points out that an ALJ must evaluate the way an individual adapts to stress and although the ALJ provided for "low-stress" jobs, he "failed to explain how low-stress work properly accommodates Plaintiff's seizure activity such that she will not suffer marked mental limitations" as opined by Ms.

Cloud when actively symptomatic with, and on the day following, seizures. Id. at 19 (citing R. 397).

The Commissioner argues the ALJ's finding Ms. Cloud's opinions less persuasive than other medical evidence is supported by the record and if the court is to reverse that decision it "must find that it is not possible to reach the same conclusion as the ALJ on the record before him." (Comm'r Br. 5) (citing Lax, 489 F.3d at 1084). He argues Plaintiff does not demonstrate the ALJ's rationale is unsupported by substantial evidence but merely asks the court to reweigh the evidence. He argues, "Because the ALJ's decision was supported by more than a mere scintilla of evidence, and a reasonable fact-finder could reach the same finding as the ALJ, the ALJ's decision should be affirmed." Id. (citing Hendron v. Colvin, 767 F.3d 951, 954 (10th Cir. 2014)). He notes the ALJ acknowledged Plaintiff has pseudoseizures and assessed RFC limitations to account for that fact but found Ms. Cloud's opined limitations not persuasive. Id. at 6. He argues that Plaintiff provided no authority, and the record contains none, for her assertion that anti-convulsive medications do not treat stress-induced seizures, and that "Plaintiff was on anti-convulsive medication in February 2017, and began having seizures when she stopped taking it." Id. at 7. He argues the ALJ's rationale for discounting Ms. Cloud's opinions is supported by the record evidence. Id. at 7-8. He concludes by arguing

> It is irrelevant then whether or not the evidence could be interpreted differently. Reasonable minds, of course, can look to the same hundreds of pages of medical records and differ on what is persuasive. To overrule the agency's factual finding, however, a reviewing court "must find that the evidence not only supports [a contrary] conclusion, but compels it."

(Comm'r Br. 8-9) (quoting Elias-Zacarias, 502 U.S. at 481 n.1 (emphases in original)).

6

In her Reply Brief, Plaintiff argues the Commissioner's Brief is merely a post-hoc analysis attempting to provide a rationale supporting the ALJ's rejection of Ms. Cloud's opinion.  (Reply 1).  She asserts the Commissioner's argument that it was appropriate to discount Ms. Cloud's opinions because of a brief treating relationship should also have been applied to the state agency psychologists' opinions because they had no treating relationship with Plaintiff.  She argues the Commissioner did not respond to her argument the ALJ did not address the impact stress has on her seizure activity.  Id. at 2.  She argues this is not a case where Plaintiff merely interprets the evidence differently than the ALJ, but "the ALJ failed to explain why the evidence he cited supports his rejection of [Ms.] Cloud's opinion.  Clearly, the ALJ's decision was not sufficiently articulated so that it is capable of meaningful review."  She concludes:

> the reasons proffered by the ALJ for rejecting [Ms.] Cloud's opinion[s] are not supported by substantial evidence where the ALJ inconsistently contended that [Ms.] Cloud did not have a lengthy treating history, but did not consider the same factor when weighing the non-examining State [sic] agency consultants' opinions.  The ALJ's rejection of [Ms.] Cloud's opinion is not supported by substantial evidence where he contended that [Ms.] Cloud's opinion was based upon Plaintiff's subjective complaints without citing to any evidence to establish such a claim.  The ALJ's rejection of [Ms.] Cloud's opinion is not supported by substantial evidence where he relied on her seemingly sporadic treatment as a basis upon which to reject her opinion where there is nothing in the record to suggest that her treatment regimen was sporadic and not completely appropriate for her condition.  The ALJ's rejection of [Ms.] Cloud's opinion is not supported by substantial evidence where the ALJ contended that [Ms.] Cloud needed to personally observe Plaintiff's seizure activity in order to opine on her functional limitations related thereto.

Id. at 3-4.

**A.     The Standard Applicable**

Effective March 27, 2017, the regulations changed the procedures and standards for evaluating evidence, including medical source opinions. The regulation abrogated the treating physician rule for claims filed on or after March 27, 2017. The new regulations define "medical opinion" and "prior administrative medical finding:"

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …
>
> > (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
> >
> > (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
> >
> > (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
> >
> > (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.
>
> \*\*\*
>
> (5) Prior administrative medical finding. A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:
>
> > (i) The existence and severity of your impairment(s);

>    (ii) The existence and severity of your symptoms;
>
>    (iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;
>
>    (iv) Your residual functional capacity;
>
>    (v) Whether your impairment(s) meets the duration requirement; and
>
>    (vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. § 404.1513(a) (2017).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. § 404.1520c (2017). That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a) (2017). The regulation provides that the SSA will consider each medical source's opinions using five factors, supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a)(c)(1-5) (2017). It provides that the most important factors in evaluating persuasiveness are supportability and consistency. Id.

The regulation explains that the decision will articulate <u>how persuasive</u> the SSA finds all medical opinions and prior administrative medical findings. 20 C.F.R. § 404.1520c(b) (2017). The articulation requirement applies for each source, but not for

9

each opinion of that source separately.  20 C.F.R. § 404.1520c(b)(1) (2017).  It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record."  20 C.F.R. § 404.1520c(b)(2) (2017).  The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20 C.F.R. § 404.1520c(b)(3) (2017).  Finally, the regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources.  20 C.F.R. § 404.1520c(d) (2017).

### B.     The ALJ's Findings

The ALJ explained his evaluation of a seizure questionnaire and a mental medical source statement completed by Ms. Cloud.  (R. 19) (evaluating seizure questionnaire, Ex. 5F (R. 401-03)), (R. 20) (evaluating mental medical source statement, Ex. 4F (R. 396-400)).  He noted the seizure questionnaire was completed by "claimant with her therapy provider," and found it partially persuasive to the extent sudden onset of seizure "would reasonably affect the claimant's ability to work at heights and around power machinery," but found it "not reasonable or warranted for the claimant to have additional absences" because the questionnaire was not consistent with nor supported by "the relatively

10

sporadic treatment and the further indication the claimant's [sic] is not consistently treated with anti-convulsive." (R. 19). He found Ms. Cloud's mental medical source statement not persuasive because the treatment relationship had been brief and the "opinion appears to be based upon the claimant's reports rather than objective observation," there is no evidence Ms. Cloud saw a seizure or postictal effects, the other record evidence does not suggest the marked limitations Ms. Cloud opined, and Ms. Cloud's reported frequency is inconsistent with Plaintiff's reports and the other record evidence. (R. 20).

The ALJ evaluated a psychological examination performed by Ms. Cramer, MA LCPC, and found her opinion persuasive. (R. 20). He noted there is no evidence Plaintiff is socially limited, the opinion Plaintiff can manage a moderate contact environment is not supported, and the need for a low-demand environment is not well defined. Id. at 21. He found her remaining opinions were "reasonably well supported by [her] own testing data," and the "diagnosis and [Plaintiff's] testimony support some limitations in low-stress environments." Id.

The ALJ also evaluated the prior administrative medical findings[3] of the state agency psychologists who reviewed the evidence at the initial and reconsideration levels. He found Dr. Kaspar's finding at the initial level persuasive, noting it was "consistent with the record and examinations performed." Id. The ALJ recognized that at the

---

[3] The court notes the ALJ referred to these as "opinions" (R. 21) although they are properly called "prior administrative medical findings" under the new regulations. 20 C.F.R. § 404.1513(a) (2017).

11

reconsideration level Dr. Becker made a finding that Plaintiff's mental impairments were not severe. (R. 21) (citing Ex. 4A (R. 79-89)). The ALJ found that finding not persuasive, noting "it is inconsistent with the record, as the examinations show the claimant does have severe mental impairments requiring limitations." Id.

## C.  Analysis

As the Commissioner's Brief suggests, new regulations were promulgated applying to cases filed on or after March 27, 2017, as was this case. The new rules were adopted "[t]o account for the changes in the way healthcare is currently delivered." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,854, 2017 WL 168819 (SSA Jan. 18, 2017). The new regulations "focus more on the content of medical opinions and less on weighing treating relationships against each other [which] is more consistent with current healthcare practice." Id. 82 Fed. Reg. at 5,854 (emphasis added).

> The SSA explained,
>
> By moving away from assigning a specific weight to medical opinions, we are clarifying both how we use the terms 'weigh' and 'weight' in final 404.1520c(a), 404.1527, 416.920c(a), and 416.927 and also clarifying that adjudicators should focus on how persuasive they find medical opinions and prior administrative medical findings in final 404.1520c and 416.920c. Our intent in these rules is to make it clear that it is never appropriate under our rules to 'credit-as-true' any medical opinion.

Id. at 5,858. The agency explained its view that

> Courts reviewing claims under our current rules [(applicable to cases filed before March 27, 2017)] have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision. As the Administrative Conference of the United States' (ACUS) Final Report

explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be [a] highly deferential standard to us.

Id. Fed. Reg. 82 at 5,853.

What is clear under the new regulations is that ALJs are to focus on how persuasive a medical source's opinions are and not on how much weight they should be given.  An ALJ is to base persuasiveness primarily on the factors of consistency and supportability and must articulate in his decision how he considered these factors.  He may, but is not required to, explain how he considered the other three factors: relationship, specialization, and other factors tending to support or contradict an opinion. The persuasiveness of the other three factors are only required to be articulated when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same."  20 C.F.R. § 404.1520c(b)(3) (2017).

Here, the ALJ did just as the new regulations require.  He explained, primarily based on the factors of consistency and supportability, how persuasive he found the opinions of Ms. Cloud, Ms. Cramer, Dr. Kaspar and Dr. Becker.  (R. 19-21).  Plaintiff cites SSR 96-8p which contains a narrative discussion requirement providing that an ALJ must explain how any ambiguities and material inconsistencies in the evidence were considered and resolved.  West's Soc. Sec. Reporting Serv., Rulings 149 (Supp. 2020). And, if the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion.  Id. at 150.  The ALJ's RFC assessment conflicts with Ms. Cloud's opinions, and he explained why he did not adopt her

13

opinions—because he found them only partially persuasive, and not persuasive, respectively.  More is not required under the new regulations.

Plaintiff's argument that Ms. Cloud's seizure questionnaire should not have been discounted because Plaintiff's pseudoseizures were not consistently treated with anti-convulsive is simply without basis in the record.  Plaintiff cites no authority that pseudoseizures are not responsive to anti-convulsive medications.  Moreover, the Commissioner points to record evidence suggesting anti-convulsive medication is used for pseudoseizures and was used to treat Plaintiff's pseudoseizures, and that when Plaintiff did not take her medication, she had seizures.  (Comm'r Br. 7) (citing R. 295).  The record to which the Commissioner cites, is an emergency room record reporting that Plaintiff had a "History of pseudoseizures," had had multiple seizures earlier in the day, and had "discontinued her doses of Depakote without approval of her doctor."  (R. 295).  The note states, "The exacerbating factor is missed medication."  Id.  The court's search of WebMD.com for "Depakote" reveals it "is used to treat seizure disorders, certain psychiatric conditions (manic phase of bipolar disorder), and to prevent migraine headaches.  It works by restoring the balance of certain natural substances (neurotransmitters) in the brain."  Available online at: https://www.webmd.com/drugs/2/drug-1788/depakote-oral/details. (last visited, December 10, 2020).  It cautions, "If this medication is used for seizures, do not stop taking it without consulting your doctor. Your condition may become worse if the drug is suddenly stopped.  Your dose may need to be gradually decreased."  Id.  The ALJ did not err in discounting Ms. Cloud's seizure questionnaire for this reason.

Plaintiff's objection to the ALJ's finding Ms. Cloud's mental medical source statement is not persuasive fares no better.  Plaintiff contends it was error to rely on the fact that Ms. Cloud had never witnessed one of Plaintiff's seizures or their postictal effects to discount her opinion.  However, as Plaintiff acknowledges, Ms. Cloud noted on her form that "All 'marked' [limitations] only apply when actively symptomatic (seizures) + days following."  (R. 397).  Thus, Ms. Cloud opined that Plaintiff had marked mental limitations both during her seizures and for the days following.  In light of the facts that the ALJ noted this opinion appeared to be based on Plaintiff's subjective reports not objective observation, that Plaintiff had gone to the Emergency Department just hours after six seizures in February 2017, that she was "alert and talkative in the ED" (R. 295) and reported the "character of symptoms is generalized," id., there appears to be no error in the ALJ's reasoning.  Plaintiff could have visited Ms. Cloud within days after a seizure where Ms. Cloud could have, at least seen the allegedly lingering postictal effects.  Or, Ms. Cloud could have reviewed the ED records from five months earlier.  The reasons the ALJ gave for finding Ms. Cloud's medical source statement not persuasive are supported by the record evidence.

Plaintiff's arguments that record evidence demonstrates Ms. Cloud's opinion should have been accepted or that evidence demonstrates the presence of stress-related seizures also fails.  First, Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.

15

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.

Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). Moreover, the ALJ recognized Plaintiff's allegations and the record evidence regarding a reduced ability to manage stress, particularly Ms. Cramer's opinion in that regard, and assessed a limitation to low stress work. (R. 18, 20-21). Plaintiff's argument that the ALJ did not explain how those low stress jobs provide that Plaintiff will not suffer marked limitations as opined by Ms. Cloud misses the burden in a Social Security case. The ALJ found that Plaintiff does not have marked limitations in mental abilities and that Ms. Cloud's contrary opinion is not persuasive. The record evidence supports that finding and if Plaintiff wants the court to impose a different finding with greater limitations she must demonstrate that the evidence compels that finding and those limitations. She has not done so.

Plaintiff's remaining arguments are based on the premise of the treating physician rule—that medical source opinions should be relatively weighed in accordance with certain rigid rules. That is no longer the case. The ALJ applied the correct legal standard. The remaining issue before the court is whether substantial record evidence ("such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") supports the ALJ's decision. The court finds it does. Plaintiff has not shown an error in the ALJ's rationale or finding and the mere fact that there is evidence which might support a contrary finding will not establish error.

The cases cited by Plaintiff when arguing the ALJ's decision was not sufficiently articulated so that it is capable of meaningful review do not require a different result. As cited and discussed above the ALJ provided reasons for finding the various medical opinions persuasive, partially persuasive, or not persuasive and those reasons are supported by substantial record evidence. That discussion is meaningful judicial review. The ALJ need not negate every other possibility. The burden is Plaintiff's to demonstrate that a different finding is compelled by the evidence.

Plaintiff cited Spicer, 64 F. App'x at 177–78, for the proposition that an "ALJ's decision be sufficiently articulated so that it is capable of meaningful review." (Pl. Br. 17). Plaintiff is correct, but Spicer is distinguishable with the case here. In Spicer, the issue was the ALJ's consideration of osteoarthritis, and the court noted that there was considerable record evidence of the plaintiff's osteoarthritis, but the ALJ's only discussion "regarding the impairment was in summarizing [the] plaintiff's hearing testimony, stating that '[s]he has intense pain in her fingers.'" 64 F. App'x at 177. The court found that the RFC in that case was not capable of meaningful review because the decision provided "no evidence that plaintiff's impairment to her hands was considered along with her fibromyalgia and gastrointestinal problems." Id. at 178. Here, the issue is the consideration of Ms. Cloud's opinions, and as discussed above the ALJ considered and discussed those opinions, articulating his reasons for finding them partially persuasive and not persuasive.

Plaintiff's citation to Langley asserts it was cited by the court in Spicer. (Pl. Br. 17). However, Langley was decided in 2004 and could not have been (and was not) cited

17

in Spicer, which was decided in 2003.  Nor was Spicer cited in Langley.  Moreover, Langley, and the other cases cited by Plaintiff were decided under the treating physician rule, 373 F.3d at 1119-23, which as noted above has been abrogated by the new regulations for claims filed on or after March 27, 2017.  In Langley, Dr. Williams was a physician who had treated the claimant for several month.  Id. at 1121.  Under, the treating physician rule, in order to reject a treating physician's opinion, the ALJ was required to "give specific, legitimate reasons for doing so." Id. 373 F.3d at 1119 (quoting Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003)).  The court remanded the case because "the ALJ did not follow the correct legal standards in considering Dr. Williams's opinion, and absent clarification from the ALJ on remand, the reasons he gave for rejecting this opinion do not appear to be supported by substantial evidence." Id. at 1123.  Under the new regulations, an ALJ is not to focus on the weight accorded a treating physician opinion, or any other opinion.  The focus is how persuasive the ALJ finds the opinion.  The court is not to weigh the opinions either.  If the ALJ applied the correct legal standard, the question becomes whether the reasons given by the ALJ for his evaluation of the persuasiveness of a medical opinion or prior administrative medical finding are supported by substantial record evidence.  In order to overturn the agency's finding of fact the court must find that the evidence compels a different conclusion.  The court's only weighing of the evidence is to determine whether the evidence can support the agency's finding—whether it is based on such relevant evidence that a reasonable mind might reach the conclusion reached by the agency.  See, Tammi F. v. Saul, Civ. A. No. 20-1079-JWL, 2020 WL 7122426, *6 (D. Kan. Dec. 4, 2020) (collecting cases).

Cagle is also based on the treating physician rule and is to the same effect. The Cagle court found the ALJ did not "provide 'good reasons in [the] decision for the weight' given to the opinions" of Dr. Galles. 266 Fed. App'x at 794. The cases of Wise, 129 Fed. App'x. at 447; and King, 114 Fed. App'x. at 972; also rest firmly on the treating physician rule and relative weighing of the medical source opinions.

Plaintiff has shown no error in the ALJ's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated December 11, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**